IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SARAH STEWART (f.k.a. Sarah Hills), | ) ) | |
| Plaintiff, | ) ) | No. CV-04-428-HU |
| v. | ) ) | |
| SEARS, ROEBUCK AND CO., a foreign corporation, | ) ) ) | FINDINGS & RECOMMENDATION/ ORDER |
| Defendant. | ) ) ) | |

Ralph F. Rayburn
RAYBURN LAW OFFICE
17685 S.W. 65th Ave., Suite 300
Lake Oswego, Oregon 97035

        Attorney for Plaintiff

Barry Alan Johnsrud
JACKSON LEWIS LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101

        Attorney for Defendant

HUBEL, Magistrate Judge:

        Plaintiff Sarah Stewart, formerly known as Sarah Hills, brings

this employment action against defendant Sears, Roebuck & Company,

her former employer.  Plaintiff contends that defendant violated

1 - FINDINGS & RECOMMENDATION/ORDER

her rights under the federal Family Medical Leave Act (FMLA) and Oregon's Family Leave Act (OFLA). She also brings a state common-law wrongful discharge claim and a claim under Oregon Revised Statute § (O.R.S.) 652.150 for the alleged failure to timely pay her wages at the time of her discharge.

Defendant moves for summary judgment on both Leave Act claims and the wrongful discharge claim. Plaintiff moves to strike certain exhibits defendant relies cites in support of its motion. I recommend that defendant's motion be denied in part and deferred on one issue under after oral argument as described below. I deny plaintiff's motion as moot.

BACKGROUND

From 1996 until October 9, 2003, plaintiff worked for defendant as an Appliance Select Consultant, as a trainer in the Human Resources Department, and in a Home Life store. The events in this action concern her position as an Appliance Select Consultant.

Defendant's "Contract Sales" division sells appliances for new homes and multi-family developments. The supervisor of the Sales Department of the Western Region of Contract Sales is David Bradlaw. One of the districts within the Western Region of Contract Sales under Bradlaw's supervision is the Pacific Northwest Division, supervised by District Sales Manager (DSM) SueLynn Cole since October 2002. The DSM supervises both Account Managers and Appliance Select Consultants. Account Managers meet with builders and developers on established accounts and meet with prospective builders to establish new accounts. Appliance Select Consultants are trained to assist homebuyers and builders in selecting

2 - FINDINGS & RECOMMENDATION/ORDER

appliances for their new homes.

Typically, the Account Manager and the builder establish a standard package of appliances for the home. Sometimes, builders direct their homebuyers to go to an Appliance Select Center where they may upgrade their appliances for an additional cost. At the Appliance Select Center, an Appliance Select Consultant will meet with the homebuyer. Generally, the Appliance Select Consultant must have current knowledge and information about products and pricing, together with the specifications made by the builder as to dimensions, and whether the builder will add a markup to the price charged to the builder by defendant, or whether the homebuyer may deal directly with defendant on additional costs.

The Appliance Select Centers are also supported by an Appliance Select Support Manager who trains Appliance Select Consultants on new software, protocols, and equipment used in running the Appliance Select Center, and assists management in addressing issues arising within the Center. The Appliance Select Support Manager has no hiring, firing, or disciplinary authority over an Appliance Select Consultant. On or about April 1, 2003, Lori Boehm became Regional Appliance Select Support Manager for the Western Region.

In her role as DSM, Cole was plaintiff's immediate supervisor. Plaintiff states that in early 2003, Cole gave her a performance appraisal in which she noted that plaintiff met or exceeded all aspects of her job performance. Ptlf's Exh. 100 (Pltf Declr.) at ¶ 9. According to Cole, plaintiff's revenue growth at this appraisal did not meet expectations. Deft's Exh. 12A (Cole Depo.) at p. 66; see also Deft's Exhs. 52, 53, 54 (various versions of

January 2003 performance review showing scores from "some expectations met" to "far exceeds expectations" depending on the particular skill assessed).

Cole states that in June 2003, she received complaints from Portland Account Managers Randy Nehl and Troy Peterson about plaintiff's responsiveness to builder customers. Deft's Exh. 12 (Cole Depo.) at p. 68. As Cole describes, Peterson and Nehl felt that plaintiff was not giving adequate service to the builders who were indicating they no longer wanted to work with the Appliance Select Center. Id. At the same time, however, plaintiff told Cole that the reason the builders were not using the Appliance Select Center was a lack of support and understanding by the Account Managers. Id. at pp. 68-69. In fact, plaintiff notes that in 2002, she emailed Bradlaw regarding her concerns about Account Managers not supplying appropriate builder information and customers for the Appliance Select Center to adequately reach its goals. Ptlf's Exh. 100 (Pltf Declr.) at ¶ 6.

On June 12, 2003, Nehl emailed Cole a list of complaints from customers regarding plaintiff's failure to return their calls. Deft's Exh. 25. Nehl explained to Cole that he needed a "select consultant" that he could always depend on and that presently, they were "limiting ourselves to [l]ow expectations, as well as poor service." Id. On June 26, 2003, Nehl emailed plaintiff a complaint he received from Concept Construction concerning customer service provided by plaintiff to Doug and Keri Lightfoot. Deft's Exh. 27. Nehl copied Cole with the email. Id. The complaint noted plaintiff's failure to return calls and the order of a replacement dishwasher which was out of stock or discontinued. Id.

4 - FINDINGS & RECOMMENDATION/ORDER

In late July, Cole received a telephone call from Zach Elkins, National Sales Manager for Contract Sales, stating that customer service complaints from builder client Bruce McIntosh about the Tigard/Portland Appliance Select Center where plaintiff worked, had come to his attention and needed to be addressed. Deft's Exh. 16 (Cole Declr.) at ¶ 7.

Cole then talked directly with McIntosh about the complaints. Id. at ¶ 8; see also Deft's Exh. 34 (Cole email to Bradlaw and Elkins regarding conversation with McIntosh). McIntosh complained of telephone calls not being returned. Id. He complained of problems with plaintiff's availability and responsiveness and noted complaints from his homebuyers of cancelled appointments. Id. Cole emailed Bradlaw and Elkins regarding her conversation with McIntosh and told them that she would speak with plaintiff the day she wrote the email, July 30, 2003, and that she believed plaintiff's performance would improve immediately, and if not, the appropriate steps would be taken. Deft's Exh. 34.

According to Cole, on July 30, 2003, Cole visited plaintiff and discussed complaints of poor customer service and failure to return calls. Deft's Exh. 16 (Cole Declr.) at ¶ 9. She told plaintiff that complaints had gone to Elkins at company headquarters and there must be no further customer service complaints. Id.

Plaintiff neither confirms nor denies that this meeting took place. In her response to defendant's factual assertion regarding this meeting, plaintiff states that she does not dispute that Cole visited with her in late August, but she makes no mention of the July 30, 2003 meeting. Pltf's Resp. to Deft's CSF at ¶ 7. In her

declaration, she states that from October 2002 when Cole became her supervisor until August 2003, plaintiff received no written discipline or corrective action plan from Cole. Ptlf's Exh. 100 (Pltf Declr.) at ¶ 10. Because Cole gave no written discipline to plaintiff at the July 30, 2003 meeting, plaintiff's reference to having received no written discipline does not contradict Cole's assertion that she met with plaintiff on July 30, 2003, regarding the customer complaints she was aware of to date, and that she orally warned plaintiff that additional customer service complaints would not be tolerated.

Either during the July 30, 2003 conversation or shortly thereafter, Cole remembers plaintiff telling her that she needed to spend time away from work in August 2003 to care for a sick family member. Deft's Exh. 12 (Cole Depo.) at p. 77. Cole agreed that plaintiff could miss work and cover the telephones from the hospital. Id. at pp. 77, 136-37. Cole asserts that this was a one-time authorization. Plaintiff contends that the approval was not limited to just one day. Pltf's Exh. 100 (Pltf Declr.) at ¶ 15.

In August 2003, Nehl and Portland Account Manager Debra Cler told Cole about additional performance concerns regarding plaintiff. Deft's Exh. 16 (Cole Declr.) at ¶ 10. The concerns included complaints about plaintiff's responsiveness. Id.; Deft's Exhs. 35, 36 (Aug. 1, 2003 emails from Nehl to Cole relaying complaints from customers regarding plaintiff's failure to return calls and failure to give pricing); Deft's Exh. 39 (Aug. 21, 2003 email from Cler to Cole noting customer compliment regarding plaintiff, but alluding to previous undisclosed problems this

6 - FINDINGS & RECOMMENDATION/ORDER

customer had with plaintiff).

Other concerns included plaintiff's casual dress, her handling of a credit on a particular account, and her selling an item at a price that seemed too low. Deft's Exhs. 37, 38 (Aug. 13, 2003 and Aug. 15, 2003 emails from Portland Account Manager Kellie Stevens to Nehl regarding plaintiff's dress; Aug. 13, 2003 and Aug. 15, 2003 forwards of Stevens's emails by Nehl to Cole with additional comment by Nehl on Aug. 15, 2003, regarding plaintiff leaving work early); Deft's Exh. 40 (several emails beginning July 12, 2003, and ending Aug. 21, 2003, regarding a credit to an account); Deft's Exhs. 41, 42 (several emails from Nehl beginning July 16, 2003, and ending Aug. 21, 2003, regarding pricing on a particular item).

On or about August 27, 2003, Cole discussed these issues with Bradlaw. Deft's Exh. 16 (Cole Declr.) at ¶ 11. Bradlaw instructed Cole to issue a performance warning to plaintiff for poor customer service. Id.

On or about August 28, 2003, Cole met with plaintiff to express concerns about plaintiff's job performance and the numerous customer complaints she had learned about in August. Id. at ¶ 12. Cole did not write plaintiff up for the customer service issues because once the write-up was on file, plaintiff would be ineligible to transfer to another department pursuant to defendant's policy. Id. at ¶ 13; see also Pltf's Exh. 105 (Cole Depo.) at pp. 80-83 (explaining that there are serious consequences for customer service complaints and Cole did not want to do anything in writing that could have a negative effect on plaintiff in the long term).

During the August 28, 2003 meeting, plaintiff asked Cole about

7 - FINDINGS & RECOMMENDATION/ORDER

family leave related to her niece's terminal illness. Deft's Exh. 12 (Cole Depo.) at pp. 85, 86; Deft's Exh. 16 (Cole Declr.) at ¶ 14. Cole and Stewart together called Arquette Bailey, defendant's human resource employee assigned to Contract Sales associates. Deft's Exh. 12 (Cole Depo.) at p. 86; Deft's Exh. 16 (Cole Declr.) at ¶ 14. Bailey told Cole and plaintiff that an illness of a niece did not qualify for FMLA leave, but that plaintiff could take an unpaid personal leave under defendant's policy. Deft's Exh. 12 (Cole Depo.) at pp. 85-89; Deft's Exh. 16 (Cole Declr.) at ¶ 14; Deft's Exh. 13 (Bailey Depo.) at pp. 10-11.

Under a personal leave, plaintiff could take twelve weeks of unpaid leave, but in contrast to the leave under FMLA, there was no guarantee of reemployment at the expiration of the leave. Deft's Exh. 12 (Cole Depo.) at pp. 86-87; Deft's Exh. 13 (Bailey Depo.) at pp. 10-11. Cole, however, told plaintiff that she would give her a written assurance of reinstatement should she choose to take personal leave. Deft's Exh. 12 (Cole Depo.) at p. 89.

During this conversation, plaintiff also told Cole that her niece had asked her to take guardianship of her niece's children in the event of her death. Deft's Exh. 12 (Cole Depo.) at p. 85. Plaintiff decided to "evaluate things" and requested information about her rights. Deft's Exh. 11 (Pltf's Depo.) at p. 19.[1]

Cole's recitation of the July 30, 2003 and August 28, 2003 meetings with plaintiff suggests that the first time plaintiff told

---

[1] Defendant neglected to include page 19 of plaintiff's deposition in its Exhibit 11 and I cannot locate it elsewhere in the record. However, plaintiff admits this asserted fact in her response to defendant's fact statement, rendering the omission of the underlying evidence immaterial.

her about a family member's medical condition was a vague reference in late July 2003 or early August 2003, and the first time plaintiff formally discussed leave was during the August 28, 2003 meeting. It was during that meeting that Cole and plaintiff reached Bailey and spoke with her on the speaker phone about leave options for plaintiff regarding her niece.

Plaintiff's recollection is different. Plaintiff states that she learned that her niece had cancer on August 3, 2003. Pltf's Exh. 100 (Pltf Declr.) at ¶ 15. She contacted Cole the next day to talk with her about the situation and several days later, she told Cole that her niece's condition required plaintiff to take some time from work. Id. On August 15, 2003, she told Cole that her niece requested that plaintiff be a foster parent to her children. Id. She states that Cole indicated her approval of plaintiff's absence from the Appliance Select Center as long as she was retrieving her messages from work while at the hospital. Id. According to plaintiff, she had several discussions with Cole from August 15, 2003, through August 18, 2003, regarding her niece's status and her need to take leave.

Plaintiff appears to agree that she and Cole spoke with Bailey during the August 28, 2003 meeting. Pltf's Exh. 100 (Pltf Declr.) at ¶ 11. And, a careful reading of plaintiff's declaration indicates that although Bailey was initially unsure of whether there would be FMLA leave for the illness of a niece, she eventually told plaintiff during that conversation that she did not believe that FMLA leave was available. Id. at ¶¶ 11, 12. However, plaintiff also states that she inquired about FMLA leave to address the issues surrounding the care of her niece's children and that

9 - FINDINGS & RECOMMENDATION/ORDER

Bailey never addressed the issue of guardianship or adoption as a basis for leave. Id. at ¶¶ 11, 12.

Plaintiff states that she spoke with Bailey three times regarding the issue of FMLA leave. Id. at ¶ 13. She gives no dates of these conversations and no indication of whether they were before or after the August 28, 2003 meeting between Cole and plaintiff. Presumably, they followed that meeting because her factual recitation in her declaration indicates that she first spoke with Bailey during the August 28, 2003 meeting.

In any event, she states that in each conversation, she asked Bailey to provide her with written information so that she could make an intelligent choice regarding her leave rights under defendant's policy and the law. Id. She states that she left messages for Elkins at least five times requesting leave information for contract sales department employees. Id. She does not state when she left those messages. Neither Bailey nor Cole ever provided her with the requested written information. Id.

On September 2, 2003, plaintiff told Cole that her mother had become very ill. Deft's Exh. 12 (Cole Depo.) at pp. 96, 97. Cole told plaintiff that she was sure that plaintiff's mother's illness qualified her for job-protected FMLA leave. Id. at p. 98. Cole told plaintiff that Cole would immediately contact Bailey and have Bailey contact plaintiff. Id.

Several days later, Bailey confirmed with plaintiff that she could take FMLA leave for her mother's illness. Deft's Exh. 13 (Bailey Depo.) at pp. 28, 29. Bailey explained that unless plaintiff had unused earned vacation, flexible holidays, or personal days, FMLA leave was unpaid. Id. at p. 29.

10 - FINDINGS & RECOMMENDATION/ORDER

1    Both Cole and Bailey recall that plaintiff indicated that she
2    could not take unpaid leave.  Id. at p. 30; Deft's Exh. 12 (Cole
3    Depo.) at p. 88.  Plaintiff denies that she ever indicated that she
4    would not take unpaid leave.  Pltf's Exh. 100 (Pltf Declr.) at ¶
5    18.

6    Plaintiff states that because she never received the requested
7    written information on leave from Cole, Bailey, or Elkins, she
8    contacted defendant's human resources hotline called the "Sears 88
9    line," to inquire if FMLA leave was available to her because of her
10   niece's illness, the guardianship issue of her niece's children,
11   and her mother's illness.  Id. at ¶ 14.  In her declaration, she
12   states that the individual she spoke with thought she may be
13   eligible for paid medical leave for herself given the significant
14   psychological issues the family illnesses presented for plaintiff,
15   however he was unsure if this type of leave was available to
16   contract sales employees.  Id.  Additionally, while she states that
17   she had multiple conversations with the Sears 88 line in August and
18   September 2003, she could not have discussed her mother's situation
19   with anyone before September 2, 2003, because that is when she
20   first learned of her mother's terminal cancer.  Pltf's Exh. 100
21   (Pltf Declr.) at ¶ 16.

22   Plaintiff states that she received conflicting information
23   from the Sears 88 line.  Id. at ¶ 14.  Because she does not detail
24   what conflicting information she received, I assume she means the
25   information described in her declaration regarding the possibility
26   of paid disability leave for herself as opposed to unpaid FMLA or
27   personal leave for the care of others.

28   According to plaintiff, she told Cole that she needed to take

11 - FINDINGS & RECOMMENDATION/ORDER

leave as a result of her niece's illness and the guardianship of her children. Id. at ¶ 18. Plaintiff does not expressly state when she first made this request. Id. She states that when she learned that her mother was terminally ill, she advised Cole that there was no question that she would need to take leave and that it was important to receive leave information in writing. Id. Cole was aware that plaintiff received conflicting information about paid and unpaid leave. Id. However, plaintiff states that whether it was paid or unpaid was irrelevant given the state of her mother's health and terminal diagnosis. Id.

On September 8, 2003, plaintiff received a call back from an individual with the Sears 88 line who was trying to reconcile some of the different information she had received regarding family leave. Id. at ¶ 19. Plaintiff states that as of September 9, 2003, Cole knew that she needed family leave and that she had, on two occasions, requested written information on her right to leave. Id.

On September 10, 2003, Cole issued a Final Warning to plaintiff for her previous violations of defendant's customer service policy. Deft's Exh. 12 (Cole Depo.) at p. 131; Deft's Exh. 4. The document noted receipt of various customer service complaints and a list of expectations for improvement. Deft's Exh. 4. The document also warned plaintiff that any additional customer service complaints would result in further disciplinary action up to and including termination. Id. In the section provided for the employee's comments, plaintiff requested that defendant contact listed customers who were satisfied with plaintiff's performance. Id. Cole reached one of the three customers plaintiff named, but

12 - FINDINGS & RECOMMENDATION/ORDER

was unable to talk with him because he rushed her off the phone due to being on a long-distance call. Pltf's Exh. 105 (Cole Depo.) at p. 142. She did not follow-up with this customer. Id. She was unsuccessful in reaching another of the customers and the third was irrelevant in her opinion because the customer was actually a delivery contractor. Id.

Before meeting with plaintiff to give her the Final Warning on September 10, 2003, Cole talked with Bailey about documenting plaintiff's performance issues. Deft's Exh. 12 (Cole Depo.) at p. 147. During that conversation, Cole talked with Bailey about plaintiff's need for paid leave. Id. Cole asked Bailey if there was anything Cole could do to get plaintiff paid time off. Id. Bailey told Cole that the only way to provide paid time off would be a one-week paid suspension. Id. Bailey told Cole that one week was the most that could be provided without "raising any red flags[.]" Id. As a result, from Thursday September 11, 2003, to Wednesday, September 17, 2003, plaintiff was suspended with pay. Deft's Exh. 4.

During the time that plaintiff was on suspension, Cole and Boehm worked at the Appliance Select Center. Deft's Exh. 16 (Cole Declr.) at ¶ 19. They discovered Appliance Select questionnaires that had not been followed up on and observed serious organizational issues involving customer files and files for follow-up issues. Id. Cole believed these organizational issues negatively affected plaintiff's ability to respond to customers and to properly follow-up on orders. Id.

Cole was in Tigard on September 18, 2003, to meet with plaintiff upon her return to work. Id. at ¶ 21. Plaintiff did not

13 - FINDINGS & RECOMMENDATION/ORDER

return to work that day because of car trouble and Cole left town for other business. Id. When plaintiff returned to work on September 19, 2003, she was presented with a "Performance Discussion/Memo" addressing the organizational issues discovered by Boehm and Cole. Id.; Deft's Exh. 5. The document required improvement of the organization of the Appliance Select Center by September 29, 2003. Id.; Deft's Exh. 5. At plaintiff's request, this time period was extended to October 1, 2003. Deft's Exh. 12 (Cole Depo.) at p. 156.

During this time, Cole understood that plaintiff had a legal right to take a leave of absence to care for her sick mother. Deft's Exh. 16 (Cole Declr.) at ¶ 16. Because it was not possible for Cole and Boehm to cover the work of the Appliance Select Center indefinitely or on an extended basis, Cole sought approval to hire a second Appliance Select Consultant for the Tigard/Portland Appliance Select Center. Deft's Exh. 16 (Cole Declr.) at ¶ 20.

Michelle Connor was hired to work at the Appliance Select Center. In response to a general application she made with defendant for any position, Helena LuLay, the retail store manager at Washington Square, called her in early September 2003 about a position as an Appliance Select Consultant. Pltf's Exh. 106 (Connor Depo.) at pp. 10-11, 25-26, 28. Connor's impression from speaking with Lulay was that the current Appliance Select Consultant (plaintiff), was going to be let go and that they she would be interviewed for that position. Id. at pp. 25-26. Cole, however, stated that she did not hire Connor to permanently replace plaintiff, but only as a temporary employee while plaintiff took leave. Deft's Exh. 12A (Cole Depo.) at pp. 121-22.

14 - FINDINGS & RECOMMENDATION/ORDER

Cole returned to Portland on October 1, 2003, and found no significant progress toward improving the situation in the Tigard/Portland Appliance Select Center. Deft's Exh. 12 (Cole Depo.) at p. 165. She issued a corrective plan to plaintiff. Id.; Deft's Exh. 7. She gave plaintiff until October 8, 2003, to get the Appliance Select Center organized to her specifications. Deft's Exh. 7; Deft's Exh. 16 (Cole Declr.) at ¶ 23.

In the evening of October 1, 2003, Cler forwarded Cole an email regarding a customer service issue that Pyramid Homes had with plaintiff. Deft's Exh. 45. On October 3, 2003, Cler wrote Cole an email detailing the Pyramid Homes issue and alerting Cole to another customer service issue involving plaintiff and Phoenix Group Construction. Deft's Exh. 46. At that point, Cole emailed Bradlaw, requesting approval to terminate plaintiff. Deft's Exh. 16 (Cole Declr.) at ¶ 24. Bradlaw declined to give the approval, citing the extended performance improvement period. Id.

On October 8, 2003, Boehm assessed plaintiff's progress on the corrective plan regarding the organizational issues at the Appliance Select Center, and found that plaintiff had not completed the work required. Deft's Exh. 50. Boehm informed Cole, Bradley, and Bailey by memorandum that plaintiff did not complete the required organizational improvements and that there were continuing customer service issues with plaintiff's performance. Id.

Cole then prepared a final written follow-up, detailing the unmet expectations. Deft's Exh. 8. Cole terminated plaintiff the next day, October 9, 2003. Deft's Exh. 12 (Cole Depo.) at p. 167.

After plaintiff was terminated, she requested a copy of her evaluations. Pltf's Exh. 100 (Pltf Declr.) at ¶ 33. She was

15 - FINDINGS & RECOMMENDATION/ORDER

advised that portions of her file, including the executed copy of her January 2003 performance evaluation, were missing. Id.; Pltf's Exh. 105 (Cole Depo.) at p. 172. Cole acknowledges that she is charged with maintaining these records. Pltf's Exh. 105 (Cole Depo.) at p. 174. It appears that the executed copy of plaintiff's January 2003 performance evaluation was eventually located as it appears as defendant's exhibit 54 in the summary judgment record.

STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors

1   Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as
2   to the existence of a genuine issue of fact must be resolved
3   against the moving party. Matsushita Elec. Indus. Co. v. Zenith
4   Radio, 475 U.S. 574, 587 (1986). The court should view inferences
5   drawn from the facts in the light most favorable to the nonmoving
6   party. T.W. Elec. Serv., 809 F.2d at 630-31.

7       If the factual context makes the nonmoving party's claim as to
8   the existence of a material issue of fact implausible, that party
9   must come forward with more persuasive evidence to support his
10  claim than would otherwise be necessary. Id.; In re Agricultural
11  Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);
12  California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,
13  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

14                            DISCUSSION

15      As noted above, defendant moves for summary judgment on the
16  Leave Act claims and the wrongful discharge claim. I address the
17  claims in turn.

18  I.  FMLA Claim

19      In her Complaint, plaintiff indicates that her leave-related
20  claims are based on theories of interference and retaliation.
21  Compl. at ¶¶ 12, 15. She contends that defendant interfered with
22  her pursuit of leave and retaliated against her for expressing her
23  need for leave. Id.

24      In Bachelder v. America West Airlines, Inc., 259 F.3d 1112
25  (9th Cir. 2001), the Ninth Circuit discussed the difference between
26  the FMLA's "interference" provision and its "discrimination" and
27  "retaliation" provisions. Under 29 U.S.C. § 2615(a)(1), "the issue
28  is one of interference with the exercise of FMLA rights, . . ., not

17 - FINDINGS & RECOMMENDATION/ORDER

retaliation <u>or</u> discrimination." <u>Id.</u> at 1124. Under the discrimination provision seen in 29 U.S.C. § 2615(a)(2), an employer may be liable for discriminating against any individual for "opposing any practice made unlawful by this subchapter[.]" 29 U.S.C. § 2615(a)(2). The retaliation provision prohibits discrimination against any individual for instituting or participating in FMLA proceedings or inquiries. 29 U.S.C. § 2615(b).

As the <u>Bachelder</u> court explained, "[b]y their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action, is instead, covered under § 2615(a)(1), the provision governing '[i]nterference[.]'" <u>Bachelder</u>, 259 F.3d at 1124.

Although plaintiff styled her leave claims in her Complaint as interference and retaliation claims, a careful reading of her allegations in light of <u>Bachelder</u> shows that her FMLA claims arise only as interference claims under section 2615(a)(1) and are not discrimination claims under section 2615(a)(2) or retaliation claims under section 2615(b). This is confirmed by plaintiff's response memorandum which makes no mention of a FMLA retaliation claim and addresses her claims only as interference claims.

Under FMLA, qualifying employees of covered employers gain two substantive rights: (1) the right to take up to twelve weeks of leave for personal medical reasons, to care for a new son or daughter, or to care for family members with serious illnesses; and (2) the right to be restored to the employee's original position, or to a position equivalent in benefits, pay, and conditions of

18 - FINDINGS & RECOMMENDATION/ORDER

employment, upon return from leave. 28 U.S.C. §§ 2612(a), 2614(a).

To protect those rights, FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right under the Act. 29 U.S.C. § 2615(a)(1). The Department of Labor's (DOL) implementing regulations for FMLA state that "[t]he FMLA prohibits interference with an employee's rights under the law[.]" 29 C.F.R. § 825.220(a). Any violation of the FMLA itself or of the DOL regulations, constitute interference with an employee's rights under the FMLA. 29 C.F.R. § 825.220(b).

"Interference" means "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." Id. For example, "employers cannot use the taking of FMLA leave as a negative factor in employment actions[.]" 29 C.F.R. § 825.220(c).

Plaintiff bases her interference claim initially on defendant's failure to provide her with written information about her FMLA rights.[2] That is, she contends that defendant violated FMLA's non-interference provision simply by failing to respond to

_____

[2] Plaintiff also contends that defendant unlawfully interfered with her FMLA rights under section 2615(a)(1) by (1) placing her under heightened scrutiny when she inquired about her rights; (2) changing her employment schedule, hiring a temporary employee, and being untruthful about the purpose of the temporary employee's hiring; (3) creating written disciplinary documentation that was either disputed or fabricated; (4) issuing a one-week suspension with pay contingent upon plaintiff accepting written discipline; (5) issuing multiple written disciplinary documents designed to document the file to support termination when the discipline was unwarranted; and (6) terminating her based upon almost entirely subjective grounds including messiness of the office and desk and during a period when her absence from the office had previously been approved. These arguments are addressed below.

19 - FINDINGS & RECOMMENDATION/ORDER

her request for written information about its FMLA policies.

Under the DOL regulations governing notice to employees, the employer must first include written guidance to employees about FMLA entitlements and employee obligations under FMLA in any employee handbook or policies concerning employee benefits or leave rights. 29 C.F.R. § 825.301(a)(1). If the employer does not have such written policies or handbooks, the employer must provide written guidance to employees concerning the employee's FMLA rights and obligations. 29 C.F.R. § 825.301(a)(2).

The notice required under section 825.301(a)(2) must be provided to employees each time notice is given pursuant to section 825.301(b) and in accordance with the provisions of that section. Id. Section 825.301(b)(1) states that the employer must provide the employee with "written notice detailing the specific expectations and obligations of the employee [regarding FMLA leave] and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1). The notice must include, as appropriate: (1) that the leave will be counted against the employee's annual FMLA leave entitlement; (2) any requirements for the employee to furnish medical certification; (3) the employee's right to substitute paid leave, and, if the employer requires such substitution; (4) any requirement regarding premium payments for maintaining health benefits; (5) any requirements for a fitness-for-duty certificate; (6) if the employee is considered a "key employee"; (7) the right to restoration to the same or equivalent job upon return; and (8) the employee's potential liability for payment of health insurance premiums paid by the employer during the unpaid FMLA leave if the employee fails to return to work after

20 - FINDINGS & RECOMMENDATION/ORDER

taking FMLA leave. _Id._

The notice required under subsection (b)(1)

> must be provided to the employee no less often than the
> first time in each six-month period that an employee
> gives notice of the need for FMLA leave (if FMLA leave is
> taken during the six-month period). The notice shall be
> given within a reasonable time after notice of the need
> for leave is given by the employee--within one or two
> business days if feasible.

29 C.F.R. § 825.301(c).

In addition to providing the written notices required under sections 825.301(a) and (b), employers "are also expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA." 29 C.F.R. § 825.301(d). If any employer fails to provide notice in accordance with section 825.301, "the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.301(f).

There is some authority for plaintiff's position that failure to provide the various notices required by FMLA can, in some cases, support a claim for unlawful interference with FMLA rights under 29 U.S.C. § 2615(a)(1). _E.g._, _Conoshenti v. Public Serv. Elec. & Gas Co._, 364 F.3d 135, 143-46 (3d Cir. 2004) (notice advising of FMLA rights); _Sistrun v. Time-Warner Cable_, No. Civ. A. 02-CV-8023, 2004 WL 1858042, at *13-14 (E.D. Pa. Aug. 19, 2004) (notice regarding designation of leave as FMLA leave); _Nusbaum v. CB Richard Ellis, Inc._, 171 F. Supp. 2d 377 (D.N.J. 2001) (posted notices in workplace, notice in employee handbook).

However, it is clear that this is not akin to a strict liability offense. As explained in _Conoshenti_, "an actionable 'interference' in violation of § 2615(a)" exists when the plaintiff

21 - FINDINGS & RECOMMENDATION/ORDER

"is able to show prejudice as a result of that violation." 364 F.3d at 144. The plaintiff "will show an interference with his right to leave under the FMLA, within the meaning of 28 U.S.C. § 2615(a), if he is able to establish that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." Id. at 143.

Other courts have reached similar conclusions. E.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161-62 (2d Cir. 1999) (assuming the employer failed to give adequate notice of FMLA rights to employee, district court properly dismissed claim when lack of notice did not prejudice employee; rejecting argument that employee may sue employer for failure to give notice even if that failure in no way affected the employee's leave, benefits, or reinstatement); Nusbaum, 171 F. Supp. 2d at (upholding claim, in face of defendant's motion to dismiss, that FMLA notice regulations were valid and that failure to give proper information interfered with plaintiff's right to structure leave in a way that would have given her FMLA protection); Palma v. Pharmedica Communications, Inc., 2001 WL 406330, at *2-3 (D. Conn. Apr. 11, 2001) (no private right of action for failure to post notice of FMLA rights when no evidence that such failure caused any interference with the plaintiff's exercise of or attempt to exercise her FMLA rights).

While the Ninth Circuit does not appear to have squarely addressed this issue, I conclude based on the cases cited above, that for a plaintiff to succeed on a claim of interference under section 2615(a)(1) based on the alleged failure to give the required notice(s) under 29 C.F.R. § 825.301, the plaintiff must show that the alleged failure caused the plaintiff some prejudice,

22 - FINDINGS & RECOMMENDATION/ORDER

"render[ing the plaintiff] unable to exercise that right in a meaningful way, thereby causing injury."

This conclusion is supports rejecting defendant's argument that the notice regulations are invalid under <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81 (2002). There, the Supreme Court struck down a DOL regulation providing that if the employer failed to designate leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement. 29 C.F.R. § 825.700(a). The Court concluded that the rule's "categorical penalty is incompatible with the FMLA's comprehensive remedial mechanism." <u>Id.</u> at 89.

The Court reasoned:

> The challenged regulation is invalid because it alters the FMLA's cause of action in a fundamental way: It relieves employees of the burden of proving any real impairment of their rights and resulting prejudice. In the case at hand, the regulation permitted Ragsdale to bring suit under § 2617, despite her inability to show that Wolverine's actions restrained her exercise of FMLA rights. Section 825.700(a) transformed the company's failure to give notice--along with its refusal to grant her more than 30 weeks of leave--into an actionable violation of § 2615. This regulatory sleight of hand also entitled Ragsdale to reinstatement and backpay, even though reinstatement could not be said to be "appropriate" in these circumstances and Ragsdale lost no compensation "by reason of" Wolverine's failure to designate her absence as FMLA leave. By mandating these results absent a showing of consequential harm, the regulation worked an end run around important limitations of the statute's remedial scheme.

<u>Id.</u> at 91.

The Court further noted that a position in which the failure to designate leave actually has some prejudicial effect on the employee "may be reasonable[.]" <u>Id.</u> at 89. But, the Court stated, "the more extreme one embodied in § 825.700(a) is not." <u>Id.</u> The court expressly declined to decide "whether the notice and

23 - FINDINGS & RECOMMENDATION/ORDER

designation requirements are themselves valid or whether other means of enforcing them might be consistent with the statute." Id. at 96.

Following Ragsdale, several courts have held that an action may be based on notice requirement violations accompanied by a showing of prejudice. Conoshenti, 362 F.3d at 143; Sims v. Schultz, 305 F. Supp. 2d 838, 845 (N.D. Ill. 2004) ("Ragdsale does not prevent an employee from attempting to prove he was prejudiced by his employer's failure to provide timely notice."); Donahoo v. Master Data Center, 282 F. Supp. 2d 540, 555 (E.D. Mich. 2003) (employee can recover for actual prejudice caused by employer's failure to provide notice); Farina v. Compuware Corp., 256 F. Supp. 2d 1033, 1055 (D. Ariz. 2003) (post-Ragsdale, plaintiff must show that she detrimentally relied on and was prejudiced by defendant's improper notice).

There is no dispute that plaintiff requested written materials and did not receive them. There is also no dispute that Bailey told plaintiff orally that plaintiff was ineligible for FMLA leave for her niece's illness. Plaintiff does not dispute that FMLA leave was unavailable to her when her niece became ill. See 29 U.S.C. § 2612(a)(1)(C) (granting entitlement to leave to care for spouse, son, daughter, or parent of employee).

Given that her niece's illness does not qualify plaintiff for FMLA leave, plaintiff cannot show any prejudice resulting from defendant's failure to provide her with written information about her FMLA rights. There can be no interference with her FMLA rights when she has none. Hoffman v. Professional Med Team, 394 F.3d 414, 418 (6th Cir. 2005) ("[t]o prevail in a claim of interference under

24 - FINDINGS & RECOMMENDATION/ORDER

the FMLA, the employee must prove, among other elements, that she was entitled to leave under the FMLA.").

The record indicates that plaintiff requested leave information related to the potential guardianship of her niece's children. At the time of her request, plaintiff possessed no FMLA rights in regard to the children because the statute provides that FMLA leave commences with the <u>placement</u> of a son or daughter for adoption or foster care. 29 U.S.C. § 2612(a)(1)(B). Apparently, neither of the children was actually placed in plaintiff's care until several months after her termination.

Nonetheless, I assume that the notice provisions in section 825.301 apply to the request for information in anticipation of qualifying FMLA leave.[3] Thus, in contrast to the request for information triggered by her niece's illness, the failure to provide the written information in response to the request triggered by the children's possible adoption or placement as foster children, can form the basis of plaintiff's claim.

Similarly, there is no dispute that the failure to provide written information triggered by plaintiff's mother's illness can form the basis of plaintiff's claim because her mother's illness qualified plaintiff for immediate FMLA leave.

Defendant's evidence shows that both Cole and Bailey orally gave plaintiff accurate information about her FMLA rights in

---

[3] Although not actually briefed by the parties, I have no doubt that the notice provisions should apply to anticipated FMLA leave so that employees who become pregnant or who are scheduling surgery, etc., may receive the pertinent information so they know beforehand what their rights are and then can make educated decisions about their time off.

25 - FINDINGS & RECOMMENDATION/ORDER

response to her requests triggered by her niece's illness and her mother's illness. However, the evidence indicates that plaintiff received no information, written or oral, from anyone with defendant regarding FMLA leave related to the care of her niece's children.

Additionally, plaintiff relies on her declaration in which she states that she was provided "conflicting information" about her leave rights. Pltf's Exh. 100 (Pltf Declr.) at ¶¶ 14, 17, 18, 21. The "conflicting information" she recites was provided by the Sears 88 line and concerned paid employee disability leave for herself caused by the psychological stress she was under and whether this leave was available to Contract Sales employees. Id. at ¶ 14.[4]

While the conflicting information about the possible paid leave was not information about FMLA leave per se, it is possible that the failure to provide written information as to plaintiff's FMLA leave rights, in combination with the conflicting information on the employer's paid employee disability leave, caused plaintiff

---

[4] Defendant argues that this statement in plaintiff's declaration must be disregarded because it is contradicted by her deposition testimony where plaintiff testified that she did not recall having a conversation with anyone associated with defendant about whether the impact of the events on her would qualify for some type of disability or illness-paid leave. Deft's Exh. 11A (Pltf Depo.) at pp. 105-06.

I reject defendant's argument because the deposition testimony is not entirely clear. The statement was made during questioning about what information plaintiff received from Cole or Bailey, not the Sears 88 line, and plaintiff, while at first stating that she did not speak with anyone with defendant regarding disability leave, then states she did not discuss the leave with Bailey. As such, it would be inappropriate to strike her declaration statement regarding information she states she received from the Sears 88 line.

to delay taking FMLA leave until she received the written information.   If she could qualify for paid leave under the employer disability plan, it was not in her interest to take unpaid FMLA leave.   Moreover, in the face of receiving conflicting information about one type of leave, it was not unreasonable for her to assume that the information she received orally about FMLA leave may be inaccurate as well.   Thus, she sought written information about FMLA leave in order to make an educated decision about her rights.   The evidence is capable of suggesting that the failure to provide the written information on FMLA delayed plaintiff's invocation of her FMLA leave rights, leaving her in a position vulnerable to increased complaints, discipline, and eventually termination.   Plaintiff has created an issue of fact regarding prejudice caused by the failure to provide written notice under FMLA.

As noted above in footnote two, plaintiff raises several other bases in support of her interference claim.   Issues of fact at least as to some of these bases preclude summary judgment for defendant on the remainder of plaintiff's FMLA claim. Additionally, it is important to note that with FMLA interference claims, plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave [or in this case, her requests for FMLA-protected leave], constituted a negative factor in the decision to terminate her [or visit other adverse employment actions upon her]." Bachelder, 259 F.3d at 1125.   The McDonnell-Douglas anti-discrimination analysis used in Title VII and other employment discrimination cases is not used in FMLA interference claims.   Id.

27 - FINDINGS & RECOMMENDATION/ORDER

First, as plaintiff notes, she received no written discipline until after she first mentioned leave. While the record shows that there were complaints pre-dating her leave request and an oral warning from Cole in late July 2003, again predating her leave requests, the timing of the initial written discipline creates a question of whether her requests for leave influenced defendant's discipline decision.

Second, plaintiff points to the hiring of Connor, the alleged temporary replacement. While Cole states that Connor was intended to replace plaintiff only during her anticipated leave, and that perhaps she could convince defendant to keep Connor on as a second Appliance Select Consultant after plaintiff's return, Connor states that no one with defendant, even Cole, told her that her hiring was only temporary. She further states that she was told that she was being hired because plaintiff was being let go. Viewing the evidence in a light most favorable to plaintiff, this could show that at the time of Connor's hiring in early to mid-September 2003, plaintiff's fate was predetermined and that her later termination in October, allegedly based on her failure to meet the organizational expectations previously documented in written discipline, was a pretext. This allows the inference that her leave requests may have been a negative factor in the decision to terminate her.

Third, the record supports plaintiff's testimony that Cole gave little time and effort to contacting the customers plaintiff believed would support her. Again, looking at the evidence in a light most favorable to plaintiff, this could suggest that Cole was more interested in documenting a negative record for plaintiff

28 - FINDINGS & RECOMMENDATION/ORDER

rather than balancing it with possible positive comments. This also allows the inference that Cole may have been negatively influenced by plaintiff's leave requests.

Fourth, plaintiff notes that when she was provided on-site training in the Redmond, Washington Appliance Select Center, she observed a lack of organization and messiness consistent with the Portland/Tigard Appliance Select Center. This creates an inference that her termination for failure to meet the organization and neatness requirements outlined by Cole, was a pretext.

Defendant's motion for summary judgment on the FMLA interference claim should be denied.

II.   OFLA Claim

Similar to FMLA, OFLA creates a right for eligible employees to unpaid leave to care for a family member with a serious health condition or to care for a newly adopted child or newly placed foster child under eighteen years of age.   O.R.S. 659A.159. "Family member" is defined as the employee's (1) spouse; (2) biological, adoptive, or foster parent or child; (3) parent-in-law; or (4) a person with whom the employee was or is in a relationship of in loco parentis.   O.R.S. 659A.150(4).   Also, similar to the FMLA, upon conclusion of OFLA leave, the employee is to be returned to his or her previously held position or to an available equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.   O.R.S. 659A.171(1).

Under the OFLA statutes, OFLA unlawful employment practices are limited to the denial of requested OFLA leave.   O.R.S. 659A.183.   However, the Oregon Bureau of Labor & Industries (BOLI) has adopted an administrative rule providing that

29 - FINDINGS & RECOMMENDATION/ORDER

> [i]t is an unlawful employment practice for an employer
> to retaliate or in any way discriminate against any
> person with respect to hiring, tenure or any other term
> or condition of employment because the person has
> inquired about OFLA leave, submitted a request for OFLA
> leave or invoked any provision of the Oregon Family Leave
> Act.

Or. Admin. Rule (OAR) 839-009-0320(3).

In a recent decision, the Oregon Court of Appeals held that the combination of OFLA statutes and this administrative rule "create[s] a civil remedy for retaliatory discharge under OFLA." Yeager v. Providence Health Sys. Or., 195 Or. App. 134, 139, 96 P.3d 862, 865 (2004), rev. denied, 337 Or. 658, 103 P.3d 641 (2004). Yeager went on to hold that this retaliation cause of action exists even for those employees who are not themselves eligible for OFLA leave. Id. at 140, 96 P.3d at 865.

Plaintiff relies upon the reasoning in Yeager in support of her OFLA retaliation claim. She also argues that she has a created an issue of fact as to defendant's motive in disciplining and terminating her and thus, defendant's motion for summary judgment must be denied. Defendant contends that plaintiff has not created an issue of fact regarding the causation element of her retaliation claim.

Neither party cites to a 2002 Findings & Recommendation in which I concluded that the OAR which purports to create the OFLA retaliation cause of action was invalid. Denny v. Union Pac. R.R., No. CV-00-1301-HU, Findings & Rec. at pp. 7-9 (D. Or. Oct. 31, 2002), adopted by Judge Jones, January 20, 2003. I determined that

BOLI's adoption of OAR 839-009-0320(3)[5] unlawfully expanded the scope of the rights afforded by the statute.

Other judges in this Court have expressly adopted the reasoning expressed in Denny. Ladendorff v. Intel Corp., No. CV-02-6259-AS, Opinion & Order at pp. 14-20 (D. Or. Mar. 19, 2004) (Judge Ashmanskas); Head v. Glacier Northwest, Inc., No. CV-02-373-MA, Opinion & Order at p. 3 (D. Or. Apr. 30, 2003) (Judge Marsh); Loumena v. Les Schwab Tire Centers of Portland, Inc., No. CV-02-856-KI, 2003 WL 23957142, at *6 (D. Or. Oct. 2, 2003) (Judge King). Additionally, Judge Brown, without citing to Denny, held that there is no retaliation action under OFLA. Jacoban v. Fred Meyer Stores, Inc., No. CV-02-1550-BR, Opinion & Order at p. 20 (D. Or. Oct. 16, 2003) ("The only cause of action authorized by the Oregon Legislature under OFLA arises from an employer's denial of an employee's leave request.").

All of these decisions, however, preceded Yeager. While this Court is not bound by decisions of lower state courts, Vestar Development II, LLC v. General Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001) ("When interpreting state law, federal courts are bound by decisions of the state's highest court"), Yeager nonetheless presents the Court with the opportunity to reevaluate the Denny analysis. Because this issue was not addressed by the parties in their briefing, I will defer ruling on the issue of whether a retaliation cause of action exists under OFLA until hearing from the parties at an oral argument to be held as soon as

---

[5] The Denny opinion refers to the identical OAR as 839-009-0320(2) rather than 839-009-0320(3).

practicably possible. After oral argument, I will issue a supplemental Findings & Recommendation as to that issue and will refer both this Findings & Recommendation and the supplemental Findings & Recommendation, at the conclusion of the period for objections and responses, together to the District Judge for review. My courtroom deputy will contact the parties to schedule the argument.

Should I conclude that plaintiff's OFLA retaliation claim is valid, I agree with plaintiff that issues of fact remain as to the motive behind defendant's discipline and termination. As explained in connection with the FMLA claim, the facts raised by plaintiff, viewed in a light most favorable to plaintiff, suggest that defendant's articulated reasons for the discipline and termination may have been pretextual and that it was motivated to act, at least in part, in response to plaintiff's requests for leave.

III. Wrongful Discharge Claim

Oregon recognizes common law claims for wrongful discharge in the context of at-will employment relationships when the employee alleges he or she has been discharged for fulfilling a societal obligation or for pursuing an employment-related right of public importance. Dunwoody v. Handskill Corp., 185 Or. App. 605, 609-12, 60 P.3d 1135, 1138-39 (2003). However, the availability of an adequate statutory remedy precludes a common law wrongful discharge claim. Id.; see also Holien v. Sears, Roebuck and Co., 298 Or. 76, 97, 689 P.2d 1292 (1984).

Both this Court and the Oregon Court of Appeals have concluded that under Oregon law, a common law wrongful discharge claim may be based on the alleged interference with FMLA or OFLA rights.

<u>Washington v. Fort James Op. Co.</u>, 110 F. Supp. 2d 1325, 1334 (D. Or. 2000) (because FMLA does not allow for emotional distress damages, it provides an "inadequate" statutory remedy, allowing plaintiff to base her wrongful discharge claim on a violation of FMLA); <u>Yeager</u>, 195 Or. App. at 140-43, 96 P.3d at 865-67 (recognizing common law wrongful discharge claim based on violation of OFLA given OFLA's reflection of an important public policy).

Defendant argues that it is entitled to summary judgment on the wrongful discharge claim because plaintiff fails to show a causal connection between her employment rights and her termination. However, as explained in connection with the FMLA claim, when the facts are examined in a light most favorable to plaintiff, they are capable of suggesting that defendant may have been motivated by plaintiff's leave requests when it terminated plaintiff. I recommend that defendant's motion on the wrongful discharge claim be denied.

IV. Destruction of January 2003 Performance Review

Although not made as a separate motion, plaintiff argues in her response memorandum that defendant destroyed plaintiff's January 2003 positive performance evaluation, that this constituted a spoilation of evidence by defendant, and that plaintiff is entitled to all favorable inferences regarding that performance evaluation as a result of defendant's actions.

First, I note that the record does not establish that the January 2003 performance evaluation was intentionally destroyed. Second, and more importantly, defendant represents in its reply memorandum that the allegedly destroyed document has been found. A copy is attached to defendant's exhibits submitted in reply.

33 - FINDINGS & RECOMMENDATION/ORDER

Thus, I need not further address this argument.

V. Plaintiff's Motion to Strike

Plaintiff moves to strike defendant's Exhibits 15-47, and 49-51, all of which are emails that Cole sent to herself or that she apparently received as emails from other employees or customers. I deny the motion as moot. First, even considering the emails, I recommend denying defendant's motion as to all of the FMLA-interference claim except for the portion based on the notice argument, the OFLA claim should I determine there is an OFLA retaliation cause of action, and the wrongful discharge claim. Second, I considered none of the exhibits sought to be stricken in the analysis of the notice-interference claim. Given this disposition, I deny plaintiff's request for oral argument on the motion to strike.

CONCLUSION

I recommend that defendant's motion for summary judgment (#22) denied as to the FMLA and wrongful discharge claims. I defer ruling on the OFLA claim until after oral argument. I deny plaintiff's motion to strike (#27) as moot.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

34 - FINDINGS & RECOMMENDATION/ORDER

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review together with the supplemental Findings & Recommendation on the OFLA claim. A scheduling order for objections and responses to objections will be issued for both Findings & Recommendations when the supplemental Findings & Recommendation is filed, after oral argument.

IT IS SO ORDERED.

Dated this  7th  day of  March , 2005.


   /s/ Dennis James Hubel
_____   Dennis James Hubel
United States Magistrate Judge

35 - FINDINGS & RECOMMENDATION/ORDER